IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:12-mj-87 |
| | ) | |
| AMINE EL KHALIFI, | ) | |
| | ) | |
| Defendant. | ) | |

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Steven W. Hersem, being duly sworn, depose and state as follows:

INTRODUCTION

1. I am a Supervisory Special Agent with the Federal Bureau of Investgation (FBI), and have been so employed since November 1995. I am currently the supervisor of the Washington Field Office's Joint Terrorism Task Force (JTTF) in Washington, D.C. I have training and experience in the preparation, presentation, and service of criminal complaints and arrest and search warrants, and in the investigation of different types of offenses against the United States, including crimes of terrorism, and in identifying terrorist support networks.

2. This affidavit is submitted in support of a criminal complaint charging AMINE EL KHALIFI with attempting to use a weapon of mass destruction against property that is owned and used by the United States or by any department or agency of the United States. In specific, EL KHALIFI attempted to detonate a bomb during a suicide attack on the United States Capitol Building.

3. This affidavit is based on my personal knowledge, my review of recorded audio and video communications, and other materials obtained during the course of this investigation, as

well as information provided to me by FBI agents and other government personnel with

knowledge relating to this investigation, particularly including the undercover law enforcement

officer identified below as "Yusuf." Because this affidavit is submitted for the limited purpose

of establishing probable cause in support of a criminal complaint and arrest warrant, it does not

set forth each and every fact that I or others have learned during the course of this investigation.

Further, unless otherwise noted, wherever in this affidavit I assert that a statement was made by

an individual, that statement is described in substance, and in part, and is not intended to be a

verbatim recitation of the entire statement.

4. EL KHALIFI was born in Morocco and entered the United States on or about June 27,

1999 on a B2 Visa (authorizing tourism travel). EL KHALIFI's visa expired in 1999, and he has

been living in the United States illegally since that date. EL KHALIFI has never applied for

citizenship.

## PROBABLE CAUSE

5. In or about January 2011, a confidential human source reported to the FBI that El

Khalifi met with other individuals at a residence in Arlington, Virginia, on or about January 11,

2011. During this meeting, one individual produced what appeared to be an AK-47, two

revolvers and ammunition. El Khalifi expressed agreement with a statement by this individual

that the "war on terrorism" was a "war on Muslims," and said that the group needed to be ready

for war.

6. On or about December 1, 2011, EL KHALIFI traveled with an individual known to

him as "Hussien" from Alexandria, Virginia, to Baltimore, Maryland, to meet an individual

introduced to him as "Yusuf." In fact, Yusuf was a law enforcement officer acting in an

undercover capacity. EL KHALIFI believed Yusuf to be associated with an armed extremist

2

group and EL KHALIFI asked to be associated with that group.  EL KHALIFI told Yusuf that

EL KHALIFI had a plan to explode a bomb at an office building in the City of Alexandria

containing offices occupied by the U.S. military, but that EL KHALIFI was unsure about

carrying out the plan because the military occupied only a part of the building.  EL KHALIFI

handled an AK-47 rifle belonging to Yusuf, and told Yusuf that EL KHALIFI wanted to conduct

an operation in which he would use a gun and kill people face to face.

7.  On or about December 8, 2011, in the City of Alexandria, EL KHALIFI told Hussien

that EL KHALIFI wanted to attack a synagogue.  After Hussien questioned the justification for

targeting civilians, EL KHALIFI suggested that they target an Army general.  EL KHALIFI told

Hussien that EL KHALIFI could research where Army generals live.  EL KHALIFI agreed that

Yusuf could be told of his plans.

8.  On or about December 15, 2011, in the City of Alexandria, EL KHALIFI told Hussien

that EL KHALIFI had found a government building and could find out from a friend when high-

ranking military officials were present at that location.  EL KHALIFI said that he wanted to

place a bomb in a restaurant that was located next to the building because it was frequented by

military officials.  EL KHALIFI also said that he and Hussien should go to the restaurant the

following week to conduct surveillance.  EL KHALIFI did not identify to Hussien either the

particular building or restaurant.

9.  On or about December 22, 2011, EL KHALIFI met with Hussien at EL KHALIFI's

residence in Alexandria, Virginia, and identified to Hussien the restaurant in Washington, D.C.,

in which EL KHALIFI wanted to plant and detonate a bomb.  EL KHALIFI then traveled with

Hussien to Washington, D.C., to surveil the restaurant in preparation for his planned bombing of

that restaurant.  EL KHALIFI told Hussien that he wanted to leave a bomb in his jacket behind a

3

chair at the restaurant. EL KHALIFI entered the restaurant and questioned a waiter at the restaurant as to its busiest time. Upon learning that the restaurant was busiest at lunchtime, EL KHALIFI indicated to Hussien that he planned to detonate the bomb at lunchtime.

10. A cast booster is a stable high explosive that when combined with a detonation source can be used as a destructive device. On or about January 7, 2012, at his apartment in the City of Alexandria, EL KHALIFI handled a cast booster provided by Hussien as an example of an explosive that could be used at the restaurant in Washington, D.C. Hussien represented to EL KHALIFI that he was an al-Qaeda operative. EL KHALIFI and Hussien discussed the possibility that EL KHALIFI's planned bombing of the restaurant would be followed by a second attack against a military installation to be conducted by others who EL KHALIFI believed to be associated with al-Qaeda. It was EL KHALIFI's understanding that his attack on the restaurant would be part of an al-Qaeda operation that would include both his restaurant bombing and the attack against a military installation. EL KHALIFI agreed to purchase nails, glue, and cell phones for use in what he believed to be the al-Qaeda attack against the military installation.

11. On or about January 8, 2012, EL KHALIFI purchased two jackets and a cell phone in and around Alexandria, Virginia, for use in his planned attack on the restaurant, as well as what he believed to be the al-Qaeda attack against the military installation. EL KHALIFI agreed to purchase two more cell phones, nails, and glue for use in what he believed to be the al-Qaeda attack against the military installation.

12. On or about January 15, 2012, EL KHALIFI and Hussien drove to a quarry in West Virginia to meet Yusuf. Before leaving the City of Alexandria, EL KHALIFI purchased nails at a hardware store. During the drive to the quarry, EL KHALIFI told Hussien that EL KHALIFI

4

had modified his plans for his attack. EL KHALIFI stated that, rather than leaving a bomb in a restaurant, he wanted to conduct a suicide/martyrdom operation in which he would blow himself up in the United States Capitol Building in Washington, D.C. EL KHALIFI told Hussien not to question his desire to do the attack. EL KHALIFI said that he would be happy killing 30 people.

13. On or about January 15, 2012, at the quarry in West Virginia, EL KHALIFI provided to Yusuf for use in what he believed to be the al-Qaeda attack against a military installation glue, cell phones, and nails he purchased from the hardware store, along with the other components of an improvised explosive device that he received from Hussien. EL KHALIFI handled the component parts of a destructive device and tried on a jacket containing an inert improvised explosive device that was provided to him by Yusuf. EL KHALIFI dialed a cell phone number that he believed would detonate a bomb placed in the quarry to see what the explosion would look like from a device similar to that which he planned to detonate at the United States Capitol Building. The test bomb detonated, and EL KHALIFI expressed a desire for a larger explosion in his attack.

14. On or about January 15, 2012, on the drive home from the quarry in West Virginia to the City of Alexandria, EL KHALIFI asked Hussien to relay to Yusuf that he wanted February 17, 2012 to be the date of his martyrdom operation at the United States Capitol Building.

15. On or about January 18, 2012, EL KHALIFI told Hussien that he wanted a bigger bomb to do more damage, and asked if the explosives he intended to use could destroy the entire building. Additionally, EL KHALIFI reiterated his intention to die in the attack. He further stated that he was abandoning plans he had earlier made to leave the United States using fraudulent documents.

16. On or about January 28, 2012, EL KHALIFI and Hussien drove from the City of

5

Alexandria to surveil the United States Capitol Building in Washington, D.C.  While driving by

the building, EL KHALIFI chose a location where he could be dropped off to enter the building

for his martyrdom operation, and the specific time that he wanted to conduct the attack.  EL

KHALIFI also asked for even more explosives to tape to his body for his martyrdom operation.

EL KHALIFI chose a method to enter the United States Capitol Building that he believed would

not attract attention from law enforcement and discussed how he would react if he were to be

approached by police officers before reaching the Capitol Building.  EL KHALIFI said that he

had decided not make a martyrdom video because he did not want people to know who

conducted the attack at the United States Capitol Building.

17.  On or about February 6, 2012, EL KHALIFI and Hussien drove from EL KHALIFI's

residence in the City of Alexandria to the United States Capitol Building in Washington, D.C.

EL KHALFI exited the vehicle to conduct surveillance on the Capitol, and walked around the

west and south sides of the Capitol.  Upon returning to the vehicle, EL KHALIFI discussed

security at the Capitol, and asked Hussien to remotely detonate the bomb he (EL KHALIFI)

would be wearing on the day of the attack if EL KHALIFI encountered problems with security

officers.  EL KHALIFI also asked Hussien to provide him with a gun that he could use during

the attack to shoot any officers who might attempt to stop him.

18.  On or about February 12, 2012, EL KHALIFI and Hussien met to discuss EL

KHALIFI's plan to commit a suicide bombing at the United States Capitol Building.  EL

KHALIFI expressed concern over resistance from police officers and asked Hussien about the

type of gun Hussien would give him for use in his attack.  EL KHALIFI asked Hussien to send

an associate to conduct additional surveillance of the United States Capitol Building to identify

the best place to enter the building.  EL KHALIFI also discussed what he believed to be the

associated al-Qaeda attack on a military installation. EL KHALIFI planned to meet on February 14, 2012, with Hussien and Yusuf to receive final training on detonating the bomb he planned to bring into the Capitol and use in his suicide bombing.

19. On or about February 14, 2012, EL KHALIFI traveled with Hussien to a hotel room in Alexandria, Virginia to meet with Yusuf. During the ride to the hotel, EL KHALIFI again discussed what he believed to be the associated al-Qaeda attack on a military installation. When Hussien told EL KHALIFI that al-Qaeda leadership intended to release a video regarding both EL KHALIFI's attack on the Capitol and what he (EL KHALIFI) believed to be the associated al-Qaeda attack on a military installation, EL KHALIFI asked that he be referred to in the video only as "al maghrabi." Once in the hotel room, Yusuf gave EL KHALIFI a MAC-10 automatic weapon, which unbeknownst to EL KHALIFI was inoperable. EL KHALIFI carried this firearm around the hotel room, looked in the mirror at himself brandishing the firearm, and practiced pulling the trigger to fire the weapon. Yusuf also showed EL KHALIFI a jacket that contained a combination of inert materials and component parts that could be readily assembled into a destructive device. EL KHALIFI put on the jacket - which he believed to contain a bomb - and practiced drawing the firearm while wearing the jacket. EL KHALIFI also practiced the operation of the detonation mechanism via cell phone. EL KHALIFI discussed the door he intended to use to enter the United States Capitol. EL KHALIFI stated that he would shoot the police officer stationed at the door in order to ensure that he would be able to detonate the bomb inside of the building.

20. On or about February 17, 2012, EL KHALIFI was picked up in Northern Virginia and entered a van with Hussien and Yusuf. The vest containing what EL KHALIFI believed to be a functioning bomb and the MAC-10 automatic weapon that he had requested were in the

vehicle. EL KHALIFI, Hussien and Yusuf proceeded from Northern Virginia to a parking

garage located in close proximity to the United States Capitol. EL KHALIFI took possession of

the MAC-10 automatic weapon and put on the vest containing what EL KHALIFI believed to be

a functioning bomb. Unbeknownst to EL KHALIFI, both the weapon and the bomb had been

rendered inoperable by law enforcement. EL KHALIFI told Hussien and Yusuf that he intended

to use the MAC-10 automatic weapon to shoot people before detonating the bomb. EL

KHALIFI walked alone from the vehicle toward the United States Capitol, where he intended to

shoot people and detonate the bomb. EL KHALIFI was arrested and taken into custody before

exiting the parking garage.

CONCLUSION

21.  Based upon the foregoing, I believe probable cause exists to conclude that, from on or about December 1, 2011, and continuing through the present date, within the City of Alexandria, in the Eastern District of Virginia and elsewhere, EL KHALIFI knowingly and unlawfully attempted to use a weapon of mass destruction against property that is owned and used by the United States or by any department or agency of the United States, all in violation of Title 18, United States Code, Section 2332a(a)(3).

FURTHER THIS AFFIANT SAYETH NOT.

Steven W. Hersem
Supervisory Special Agent
Federal Bureau of Investigation
Joint Terrorism Task Force

Subscribed and sworn to before me this 17th day of February, 2012.

/s/Thomas Rawles Jones, Jr.

Honorable Thomas Rawles Jones, Jr.
United States Magistrate Judge