IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                      ) | Criminal No. 12-CR-0037 |
| ) | |
| ) | |
| AMINE EL KHALIFI       ) | |

ORDER

This matter comes before the Court on Defendant Amine El Khalifi's motion, by counsel, for compassionate release. The government has filed a response opposing the motion and defendant has filed a reply in support of his motion. The matter is thus ripe for disposition. Oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process.

I.

The facts of this case are drawn from the presentence investigation report (the "PSR") and docket in this case. Defendant is thirty-seven years old.

In December 2011, defendant met with two individuals who defendant believed to be associated with armed extremist groups but were in fact law enforcement. *See* Statement of Facts ¶ 2 (Dkt. 25) ("SOF"). Defendant informed them that he had different plans to bomb government buildings and restaurants in the City of Alexandria and Washington, D.C. to target high-ranking military officers. *Id.* ¶¶ 3-5. In January 2012, defendant purchased cellphones, nails, and glue for his planned attacks. *Id.* ¶ 7. On January 15, 2012, defendant stated that he wanted to blow himself up in the United States Capitol Building and that he would be happy to kill 30 people. *Id.* ¶ 8. That same day defendant provided the undercover law enforcement officers with the glue, cellphones, and nails that he had purchased as well as other components of an improvised explosive device and also dialed a cellphone number that he believed would set off a test bomb at their location. *Id.* ¶ 9. On January 28, 2012,

1

defendant (i) drove to Washington, D.C. to surveil the United States Capitol Building, (ii) made detailed decisions about his plan to blow up the Capital Building, and (iii) asked his coconspirators/law enforcements for more explosives. *Id.* ¶ 10. On February 6, 2012, defendant again surveilled the United States Capitol Building and asked the undercover law enforcement officers to provide him with a gun. *Id.* ¶ 13. On February 14, 2012, defendant traveled to a hotel room where he obtained from his coconspirators/law enforcement a MAC-10 automatic weapon, which defendant did not know was inoperable, and a jacket that defendant believed contained a bomb. *Id.* ¶ 15. Then, on February 17, 2012, defendant was driven to Washington, D.C. to conduct his bombing mission, with the MAC-10 and what he believed to be a functioning bomb. *Id.* ¶ 16 He walked toward the Capitol Building and was then arrested by law enforcement agents. *Id.*

On June 22, 2012, defendant was charged in a one-count criminal information with attempting to use a weapon of mass destruction against property that is owned and used by the United States and against persons and property in the United States, in violation of 18 U.S.C. § 2332a(a). *See* Criminal Information (Dkt. 22). On June 22, 2012, defendant pled guilty to the criminal information. *See* Plea Agreement (Dkt. 24). On September 14, 2012, defendant was sentenced to thirty (30) years of incarceration by U.S. District Judge James C. Cacheris (now retired). *See* Judgment in a Criminal Case (Dkt. 44). That same day, Judge Cacheris issued an Order finding that defendant, a citizen of Morocco, was in the United States illegally and ordered that defendant be removed from the United States to Morocco after service of his sentence. *See* Order (Dkt. 42). Defendant has now served approximately nine years and is scheduled to be released in 2037.

On October 30, 2020, defendant filed his motion seeking compassionate release. *See* Dkt. 47. Defendant asserts that he is obese, has Hodgkin's lymphoma[1] and that he is incarcerated at the Federal

---

[1] Hodgkin's lymphoma is a cancer of the lymphatic system. *See* Mayo Clinic, *Hodgkin's Lymphoma*, available at https://www.mayoclinic.org/diseases-conditions/hodgkins-lymphoma/symptoms-causes/syc-20352646 (last visited November 23, 2020).

2

Medical Center at Butner, North Carolina ("FMC Butner"), which he claims has a high incidence of COVID-19 cases. With respect to his underlying conviction, defendant argues that, although he was not legally entrapped into committing the offense, he claims that it was law enforcement personnel who enabled him to commit the offense, that he had no plans to take any action against the United States before interacting with law enforcement, and that law enforcement agents took advantage of his desperate financial situation. *See* Motion at 4.

Defendant also asserts that he has exhausted his administrative remedies at FMC Butner. Motion at 9. Specifically, defendant argues that his Hodgkin's lymphoma and the related treatment put him at risk for more serious consequences if he were to contract COVID-19. *Id.* at 11. He asserts that despite undergoing several rounds of chemotherapy and radiation, the disease is still active. *Id.* Defendant also asserts that he has a body mass index ("BMI") of 31, which makes him obese and also puts him at risk of more serious consequences if he contracts COVID-19. *Id.* at 13-14. Defendant points to many cases where district courts have granted compassionate release motions for defendant's with cancers less serious than Hodgkin's lymphoma. *See id.* at 15 (collecting cases). Defendant also argues that the steps take by the Bureau of Prisons ("BOP") to stop the spread of COVID-19 are inadequate. *See id.* at 18-22. With respect to FMC Butner, defendant argues that FMC Butner has confirmed cases of COVID-19. *Id.* at 23. Finally, defendant argues that any assessment of the 18 U.S.C. § 3553(a) factors supports his release. Defendant argues that a sentence of time-served reflects the seriousness of his offense and that several courts have granted compassionate release to those convicted of terrorism offenses. *See id.* at 26 (collecting cases). Defendant argues that he has been rehabilitated and that he can receive better treatment for his condition if released. *See id.* at 27.

On November 13, 2020, the government filed its opposition to defendant's motion, arguing that defendant is subject to detention by Immigration and Customs Enforcement ("ICE") if released, such that release will not render defendant safer, and that defendant's motion should be denied based on the 18 U.S.C. § 3553(a) factors. *See* Govt. Opp'n (Dkt. 53). First, the government argues that

3

defendant's request to be released to ICE custody for deportation raises multiple practical concerns, including whether ICE has the resources to treat defendant's medical conditions and whether defendant will be able to be expeditiously deported. *See id.* at 7. Second, although the government concedes that defendant has a condition that renders defendant more at risk for severe health consequences if he contracts COVID-19, the government argues that defendant has not shown that he has a particular risk within the oncology unit at FMC Butner. *Id.* at 12. The government notes that only three inmates on the oncology floor have contracted COVID and all three recovered. *See id.* at 13. Third, the government argues that defendant has not established that his risk of contracting COVID-19 is greater at FMC Butner than at an ICE facility or, indeed, even in Morocco and thus defendant cannot show that his proposed release plan would make him safer. *Id.* at 13-14. The government further notes that there is no evidence that defendant will have the same access to necessary medical care if he is released. *Id.* at 15. Finally, the government argues that defendant's motion should be denied based on the § 3553(a) factors. *Id.* at 16.

On November 19, 2020, defendant filed a reply in support of his motion. *See* Reply (Dkt. 54). Defendant argues that the government's description of the facts of the case "minimizes the degree to which the undercover agents influenced him along the way." *Id.* at 1. Defendant relies on *United States v. Hasanoff*, No. 10-cr-162, 2020 WL 6285308 (S.D.N.Y. Oct. 27, 2020), to argue that his terrorism conviction should not stand in the way of compassionate release because like the defendant in *Hasanoff*, the defendant here lacked "a good sense of his place in society" and was vulnerable to guidance from "all the wrong places." *Id.* at 2-3. Defendant further argues that ICE detention is not a reason to deny the motion, because the proper focus is whether defendant has demonstrated extraordinary and compelling reasons for release and because many courts have released defendants with pending ICE detainers. *Id.* at 4 (citing cases). Defendant also asserts that in Morocco he will be living in a private home and able to maintain social distance from other person. *Id.* at 6. Defendant notes the recent outbreak at FMC Butner, which he argues is consistent with the trend nationwide. *Id.*

at 7. Defendant argues that compassionate release has been granted in at least five terrorism cases and that recidivism for terrorism cases is low. *Id.* at 9.

## II.

Defendant has properly exhausted his administrative remedies in this matter. Nonetheless, defendant's motion must be denied, because defendant has failed to carry his burden of demonstrating "extraordinary and compelling reasons" warrant compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and because the § 3553(a) factors weigh against his release.

Pursuant to Section 3582(c) defendant bears the burden of establishing that (i)"extraordinary and compelling reasons" exist and (ii) an analysis of the § 3553(a) factors warrant a reduction in his sentence. 18 U.S.C. § 3582(c). As the Third Circuit sensibly recognized "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 954, 597 (3rd Cir. 2020). Thus, district courts within the Eastern District of Virginia have examined whether a defendant has both (i) a particularized susceptibility to the disease and (ii) a particularized risk of contracting the disease at his prison facility. *United States v. White*, No. 2:07-cr-150, 2020 WL 1906845, at *1 n.2 (E.D. Va. Apr. 17, 2020).[2] Cases in this District typically apply this two-part test. Part of establishing extraordinary and compelling reasons for granting compassionate release is that defendant must demonstrate that his release plan presents a viable alternative. *See Feiling*, 2020 WL 1821457, at *8.

Defendant arguably satisfies the first prong of the *White* test – that he faces greater health consequences if he contracts COVID-19 – based on his Hodgkin's lymphoma and the associated treatment, but defendant fails to satisfy the second prong of the *White* test or to show that he would be

---

[2] *See also United States v. Feiling*, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020).

at less risk of contracting COVID-19 if he is released from prison. To begin with, defendant is currently housed at the Oncology Unit at FMC Butner and he has not established that there are any current cases of COVID-19 in the Oncology Unit at FMC Butner. The government reports that three inmates in the Oncology Unit have tested positive over the entire course of the pandemic, but they all have recovered, and the virus does not appear to have spread to other inmates on the Oncology Unit. *See* Govt. Opp'n at 13. Thus, at the moment, there are no positive cases in the Oncology Unit. Defendant speculates that COVID could spread within the unit through any number of means, but such speculation does not justify compassionate release. *See Raia*, 954 F.3d at 597; *Untied States v. Ilarraza*, 460 F. Supp. 3d 120, 122 (D. Mass. 2020) (denying compassionate release to defendant at FCI Butner where "[n]o one in his unit has tested positive for COVID-19").[3] In sum, defendant cannot establish a particularized risk of contracting COVID-19 in the FMC Butner Oncology Unit.

Moreover, as the government notes, defendant is subject to an immigration detainer. *See* Opp'n Br. at 2. This factor also undercuts any finding that extraordinary and compelling reasons exist to release defendant because, ultimately, defendant will not be released. Even if defendant were granted compassionate release, he would not be released from federal custody, but instead he would be detained pursuant to the detainer lodged against him and then removal proceedings would commence. In these circumstances, several courts have denied motions for compassionate release where a detainer would prevent a defendant from being released. In *United States v. Guyton*, No. 11-cr-271, 2020 WL 2128579 (E.D. La. May 5, 2020), the district court found that "compassionate release of Defendant to remove him from the prison setting would be futile where there is a detainer lodged against him. *Id.* at *3.[4]

---

[3] *See also United States v. Brady*, No. 18-cr-316, 2020 WL 2512100, at *4 (S.D.N.Y. May 15, 2020) (denying motion for compassionate release in part based on the fact that "there are no cases in the housing unit where Brady resides").

[4] *United States v. Ng*, No. 15-cr-706, 2020 WL 2301202, at *8 (S.D.N.Y. May 8, 2020) (noting that granting compassionate release "would be futile since Ng is subject to removal as soon as he is released from prison"); *United States v Prelai*, No. 16-cr-55, 2020 WL 3642029, at *3 (S.D.N.Y. July 6, 2020) ("By granting [defendant's] motion for compassionate release, the Court would likely be increasing his chances of contracting COVID-19, since

6

Another district court has noted, a defendant's immigration status is "[a] huge consideration" because, "[w]henever [the defendant's] criminal sentence ends, he will not be automatically released." *United States v. Maka*, No. 03-c4r-84, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020). In denying the motion for compassionate release, the *Maka* court found that the detainer and the defendant's possible deportation "undercuts his argument that shortening his sentence would be compassionate." *Id.* at *5. As the government notes, travel to Morocco could expose defendant to COVID-19, Morocco has a incidence of COVID-19, and it is unclear when defendant would be deported to Morocco. Although defendant cites cases where an ICE detainer was not an impediment to compassionate release, those cases are distinguishable and unpersuasive; those cases either dealt with very different factual circumstances or failed to address the existence of the ICE detainer in a meaningful way.[5]

Importantly, defendant has failed to show that his proposed release would indeed be compassionate or presents a viable alternative to incarceration. *See Feiling*, 2020 WL 1821457, at *8. Defendant has not shown that he would be safer in either ICE detention or in Morocco. As one district court explained, compassionate release should not "simply take [defendant] out of the proverbial frying pan and place him into the fire." *Brady*, 2020 2512100, at *4. At FMC Butner, defendant is receiving

---

release from his federal sentence would likely result in [defendant's] transfer to a different, and presumably less healthy, immigration facility, due to his immigration detainer.").

[5] *See United States v. Bornales*, 2020 WL 6544305 (E.D. Va. Nov. 6, 2020) (granting compassionate release where the government did not object to compassionate release and the defendant was non-violent offender and there was no reference to existing order of removal); *United States v. Frometa*, 2020 WL 6132296 (S.D.N.Y. Oct. 19, 2020) (granting compassionate release to a defendant who received a 40-month sentence for a drug crime where the defendant obtained expedited deportation to Dominican Republic); *United States v. Camacho-Duque*, 2020 WL 5951340 (S.D.Fla. Oct. 5, 2020) (granting compassionate release to a defendant who received a 30-month sentence for a drug crime where the district court only discussing ICE detainer with reference to danger to the community presented by defendant); *United States v. Morrison*, 2020 WL 3447757 (D. Md. 2020) (granting compassionate release where defendant received an 18-month sentence for illegal reentry and where the district court only discussed the ICE detainer with respect to danger to the community presented by defendant); *United States v. Yrorita*, 2020 WL 4915555 (E.D. Mich. 2020) (granting compassionate release where defendant had only three months left on his sentence and where it would be left to an immigration judge to decide whether defendant is subject to removal); *United States v. Ullings*, 2020 WL 239496 (N.D. Ga. 2020) (in considering compassionate release there was no discussion of the ICE detainer); *United States v. Guzman Soto*, 2020 WL 2104787 (D. Mass.) (in considering compassionate release there was no discussion of effect of ICE detainer and the government did not object to modified judgment).

treatment for his Hodgkin's lymphoma. If released to ICE custody, defendant may not be able to obtain continuity of care, especially if he has to quarantine both before and after a transfer of custody. Defendant has also presented no evidence that he would be able to receive treatment in Morocco; indeed, defendant only asserts that he will be able to maintain social distance and isolate there. *See* Reply at 4. Defendant does not say in whose home he will live in Morocco or how he will obtain medical care. The lack of this information is especially troubling given that the PSR noted that defendant lacked the means to "pay even a nominal fine." PSR ¶ 49. As other courts have held, where a defendant failed to provide information "suggesting he would find circumstances on release placing him at a lower risk than he currently faces from COVID-19" or that his medical conditions will be treated outside of prison, a district court "has no reason to take the extraordinary step of reducing Defendant's lawfully imposed sentence." *United States v. Soto*, No. 3:14-cr-179, 2020 WL 5913989, at *2 (M.D.N.C. Oct. 6, 2020).[6] Accordingly, this provides another basis for holding that defendant has not established extraordinary and compelling reasons for his release.

Even assuming *arguendo* that defendant could establish extraordinary and compelling circumstances warranting his early release (he cannot do so), an analysis of the 18 U.S.C. § 3553(a) factors would still require denial of defendant's motion. Defendant committed a very serious crime, namely attempted use of a weapon of mass destruction to destroy the United States Capitol Building. Although defendant accepted responsibility for his crime at his sentencing, defendant's briefs in support of his motion are replete with efforts to minimize his role and to blame law enforcement. Defendant's counsel even goes so far as to say, "if it hadn't been for the involvement of the FBI, this offense would never have occurred." Motion at 5. This contention is palpably nonsense. Defendant

---

[6] *See also United States v. McFadden*, 2020 WL 6531937 at *4 (E.D. Tex. June 25, 2020) (denying motion for compassionate release where, "because McFadden is housed in a medical facility where he is monitored and already receives treatment for his afflictions, he is likely in a better position to have his medical needs addressed than most of the unincarcerated, civilian population").

8

had clearly decided to commit this very serious crime and took steps complete the crime. Thus, defendant was appropriately punished for committing this crime with thirty years of incarceration. Defense counsel's argument in this regard is not only unpersuasive but is disturbing and undermines defendant's argument that he has been rehabilitated and that he does not present a danger to the community. Moreover, defendant has only served nine of the thirty years to which he has been sentenced. Reducing defendant's sentence to one-third of what he was sentenced would not provide the requisite statutorily just punishment, nor would it serve to provide adequate deterrence, general or specific, or promote respect for the law.[7]

Once again, seeking to avoid this result, defendant cites to a two terrorism cases that are easily distinguishable from this case; defendants in those cases had served nearly all of their sentences.[8] Defendant also cites to several cases that reach a different result under the § 3553(a) factors and which are unpersuasive here. First, defendant cites to *United States v. Hasanoff*, 2020 WL 6285308 (S.D.N.Y. Oct. 27, 2020), in which the defendant was released with five years left on his sentence. To begin with, defendant has three times the amount of time left on his sentence as the defendant in *Hassanoff* had left in his sentence. Moreover, in *Hasanoff*, the district court, in a somewhat puzzling statement, relied on the defendant's lack of a "good sense of his place in society" and susceptibility to guidance from "all the wrong places" as mitigating factors. *Id.* No such mitigating factors exist in this case. In any event, in *Hasanoff*, the district court emphasized that those circumstances had changed; here, defendant has not presented any evidence that defendant's place in society or susceptibility to guidance has changed. In sum, *Hasanoff* is simply inapplicable and unpersuasive.

---

[7] *See also United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("Despite Kincaid's assertion that the amount of time served is not a proper basis for denying compassionate release, the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate.").

[8] *See United States v. Hassan*, 2020 WL 5424797 (D. Minn. Sept. 10, 2020) (granting compassionate release where defendant had served nearly all of the sentence imposed); *United States v. Hossain*, 465 F. Supp. 3d 114 (N.D.N.Y. 2020) (defendant had served nearly all of his sentence).

9

Similarly, defendant cites to *United States v. Hassoun*, 2020 WL 4187913 (N.D. Ill. July 3, 2020). In which, contrary to this case, the district court there found defendant's blame of law enforcement officers persuasive and held that defendant did not pose an actual threat to the public. This decision is not only distinguishable but unpersuasive; defendant's attempt to shift the blame for his criminal decision-making is not a mitigating factor. Additionally, as set forth in the SOF, this defendant clearly presented a danger to the public as he took steps to take a weapon of mass destruction into the United States Capitol Building together with a gun and he intended to kill people in doing so. *See* SOF. Also, in *Hassoun*, the district court there relied on the fact not present here that "defendant's conduct was not driven by religious ideology or any connection to a terrorist organization." *Hassoun*, 2020 WL 4187913, at *1. Not so here, where defendant *was* acting on his religious views, Reply at 1, and where defendant mistakenly believed that he was interacting with members of an armed extremist group, SOF ¶ 2.

Finally, defendant cites *United States v. El-Hanafi*, 460 F. Supp. 3d 502 (S.D.N.Y. 2020). In that case, the district court relied on the defendant's childhood abuse and poverty and "exceptionally close" relationship with his family to justify his release. Significantly, the district court did not specifically discuss each of the § 3553(a) factors and assess their application to that case. *Id.* at 510. Accordingly, that case is distinguishable and not persuasive here as the 3553(a) factors here weigh decisively against defendant's release twenty years before his release date.

Accordingly,

It is hereby **ORDERED** that defendant's motion for compassionate release (Dkt. 46) is **DENIED**.

The Clerk of Court is directed to send a copy of this Order to all counsel of record.

Alexandria, VA
November 24, 2020

T. S. Ellis, III
United States District Judge

10